Anthony **CAPRIO**, Plaintiff,

v.

**THE UPJOHN COMPANY, Consolidated Rail Corporation, American Financial Group, Inc., Defendants.**

**No. 3:96CV1026(WWE).**

United States District Court, D. Connecticut.

June 6, 2001.

---

Charles C. Goetsch, Scott E. Perry, Cahill & Goetsch, New Haven, CT, George P. Chada, Natrona Heights, PA, Michael W. Cahill, Kerry M. Gleason, Law Offices of Michael W. Cahill, New Haven, CT, for Plaintiff.

Vincent A. Errante, R. Cornelius Danaher, Jr., Christopher J. Coxon, Danaher, Tedford, Lagnese & Neal, Hartford, CT, Patrick J. Flaherty, Cooney, Scully & Dowling, Hartford, CT, Daniel B. Donahoe, Kendra L. Smith, Burns, White & Hickton, Pittsburgh, PA, for Defendants.

### RULING ON MOTION TO DISMISS

EGINTON, Senior District Judge.

In this case, plaintiff Anthony Caprio claims that he was exposed to hazardous chemical substances contained in toxic sludge released into the environment by defendant The Upjohn Company, which substances allegedly caused plaintiff to suffer from bladder cancer.

Defendant Upjohn moves for dismissal of plaintiff's Second Cause of Action, which alleges that defendant violated Connecticut's Clean Water Act. For the following reasons, defendant's motion will be denied.

### FACTUAL BACKGROUND

For purposes of this motion, the facts alleged in the plaintiff's complaint are taken as true.

Plaintiff was formerly employed as a freight trainman for the New York, New Haven and Hartford Railroad, Penn Central, and Conrail. Specifically, he was assigned to deliver and receive open gondola cars to and from defendant Upjohn's chemical plant in North Haven, Connecticut.

During the time of plaintiff's employment as a freight trainman, Upjohn's North Haven chemical plant produced chemical substances containing, *inter alia,* aromatic arylamines, such as benzidine, ortho-tolidine, dichlorobenzidine, and ortho-dianisdine. During the manufacturing process, Upjohn generated an industrial waste stream consisting of a toxic waste sludge that contained elements of the arylamines. This sludge was transferred by crane into an open dump truck, which then dumped it into open rail gondola cars. The open gondola cars containing the sludge were transported by railroad, and then the sludge was released into the environment after being dumped into an open pond.

Plaintiff ingested the arylamines during the course of the toxic sludge's transportation in the open rail gondola cars. In 1977, plaintiff was diagnosed with bladder cancer, which requires extensive surgery. Plaintiff was unaware of any causal connection between the cancer and his chemical exposure until September 20, 1995, when he read an article in the *New Haven Register* that reported on a study that found a causal connection between exposure to arylamines and bladder cancer.

### PROCEDURAL HISTORY

The following procedural history pertains to the disposition of this motion to dismiss.

On June 6, 1996, plaintiff filed his initial complaint against Upjohn in this action. That complaint alleged that plaintiff's exposure was due to the negligence of defendant's agents, servants, or employees, who failed to "maintain and operate their facilities in a reasonable and safe manner for the plaintiff to perform his duties and responsibilities," failed to "warn the plaintiff of the dangerous exposure plaintiff was incurring," and failed to "conduct their operations in such a way as not to injure persons lawfully on their premises."

On October 30, 1996, plaintiff filed an amended complaint that alleged a violation of the Federal Employers' Liability Act against Consolidated Rail Corporation and American Financial Group, and two counts specifically against Upjohn.

In his second cause of action, plaintiff alleged that, "as a result of defendant Upjohn's release into the environment of hazardous chemical substances or mixtures between the years 1968 and 1983, the plaintiff Anthony Caprio has suffered personal injury in the form of bladder cancer . . . ." In the third count, the plaintiff alleged that "as a result of defendant Upjohn's negligence, the plaintiff Anthony Caprio has suffered a personal injury in the form of bladder cancer . . . ."

On December 3, 1996, Upjohn filed a motion to dismiss the second and third counts of the amended complaint, arguing that plaintiff had failed to state a cognizable claim and that his negligence action was barred by the three year statute of limitations, Connecticut General Statutes (C.G.S.) Section 52–584.

On September 17, 1997, the Court granted Upjohn's motion to dismiss the second and third counts.

The Court's dismissal of the second count was based on its holding that hazardous substances in other than waste form are expressly exempted from CERCLA, and that the plaintiff's allegations supported neither the conclusion that aryla-

mines were released as "waste" nor that the expulsion of the arylamines constituted the type of "release into the environment" contemplated or intended by CERCLA.

The Court dismissed the third count based on application of the three year statute of limitations for negligence actions. C.G.S. § 52–584. The Court found that Section 52–577c(b), which provides that a cause of action for exposure to a hazardous chemical substance released into the environment accrues on the date of discovery not the date of the exposure, did not apply because the third count did "not involve the release of hazardous material from industrial waste streams or toxic waste dumps into the ambient environment that would potentially affect groundwater and drinking water." The Court also indicated that C.G.S. § 52–584 governed the third count because § 52–577c was enacted after § 52–584, and § 52–577c contained no reference to the earlier statute.

On September 17, 1998, plaintiff filed a motion for relief from the district court's order dismissing the second and third counts of the amended complaint due to newly discovered evidence that supported allegations that material in gondola cars was in waste form. On May 26, 1999, the district court granted the plaintiff's motion for relief and ordered the plaintiff to file a second amended complaint that set forth "the federal or state statute or common law theory under which he is pursuing relief in the second cause of action."

On August 9, 1999, plaintiff filed his second amended complaint, which states that his second cause of action "is brought under C.G.S. Section 52–577c of Connecticut's Clean Water Act to recover damages for personal injury caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the

environment." The count alleges further that "Upjohn violated Connecticut's Clean Water Act by releasing into the environment the sludge from an industrial waste stream or toxic waste dump in a manner that would potentially affect ground water and drinking water as well as ambient air, land surfaces, and surface waters."

Defendant's pending motion to dismiss argues that plaintiff has failed to identify a legal basis for his second cause of action.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Defendant argues that plaintiff's second cause of action should be dismissed because the allegations state that it is brought "under C.G.S. Section 52–577c of Connecticut's Clean Water Act," which section represents a statute of limitations that does not create a private right of action. Plaintiff counters that his second count alleges negligence *per se* based on Upjohn's violation of the standards set forth in the Connecticut Water Pollution

Control Act ("CWPCA"),[1] specifically §§ 22a–427 and 22a–452. Plaintiff argues further that Section 52–577c gives rise to either an explicit or implied private right of action for violation of the CWPCA.

Under general principles of tort law, a requirement imposed by statute may establish a duty of care. *See Commercial Union Ins. v. Frank Perrotti & Sons, Inc.* 20 Conn.App. 253, 260, 566 A.2d 431 (1989) (a municipal ordinance requiring separation of combustible materials from other trash could supply the standard of care in negligent disposal of flammable fuel claim). Violations of statutory standards may be the basis of a claim of negligence *per se* if the plaintiff is within the class of persons whom the statute was intended to protect and if the harm was of the type the enactment was intended to prevent. *Gore v. People's Savings Bank,* 235 Conn. 360, 375–76, 665 A.2d 1341 (1995).

This Court recognizes that a split of authority exists among the superior courts of Connecticut that have considered whether a negligence *per se* action may be based on violation of the CWPCA, specifically C.G.S. 22a–427. *See French Putnam LLC v. County Environmental Services,* 2000 WL 1172341, *10 (Ct.Super.2000) and cases cited therein. However, the Court is persuaded by the analysis of those courts that have sustained such actions.

Section 22a–422, CWPCA's Declaration of Policy, states that the "pollution of the waters of the state is inimical to the public health, safety and welfare of the inhabitants of the state...." Section 22a–427 provides that "[n]o person or municipality shall cause pollution of any of the waters of the state or maintain a discharge of any treated or untreated wastes...." As a resident of New Haven, Connecticut, plaintiff is within the class of persons that the statute was intended to protect. Furthermore, plaintiff's allegations establish that he is a potential victim of pollution or hazardous waste discharged into the water of Connecticut. Accordingly, his injury is within the type that the enactment of the CWPCA sought to protect, and a negligence *per se* action may be maintained based on violation of the standards set in the CWPCA.

The Court also reconsiders its previous ruling dated September 17, 1997, to the extent that it indicated that Section 52–584, rather than Section 52–577c, governs plaintiff's negligence action. Statutes of limitations that are procedural and not tied to a statutory right of action are considered to be in effect at the time the action is filed unless a contrary legislative intent is expressed. *Roberts v. Caton,* 224 Conn. 483, 488, 619 A.2d 844 (1993). As defendant argues, Section 52–577c is procedural because it only regulates the time within which such action is brought and is not tied to a statutory right of action. *Tolchin v. Shell Oil Co.,* 1999 WL 989595 (Ct.Super.1999). The plain language of the statute evidences no legislative intent to limit the time period for applicability of the statute where a plaintiff discovers injury based on exposure to a hazardous chemical substance released into the environment. In fact, Section 52–577c's discovery rule evidences the legislative intent to allow actions based on a date that a latent injury caused by exposure to a hazardous chemical substance is or should be discov-

---

1. Plaintiff's complaint makes reference to Connecticut's Clean Water Act rather than the CWPCA. However, the CWPCA is commonly referred to as Connecticut's Clean Water Act. *See Starr v. Commissioner of Environmental Protection,* 226 Conn. 358, 627 A.2d 1296 (1993). Accordingly, defendant Upjohn has had sufficient notice of the basis of plaintiff's allegations against it.

ered regardless of the time period allowed for general negligence actions set forth in Section 52–584. Accordingly, Section 52–577c(b) govern's plaintiff's action.

Because the Court has found that plaintiff has a viable claim based on negligent acts in violation of the CWPCA, and because the Court has found Section 52–577c(b) to be procedural, it need not consider whether the second cause of action states a claim based on a private right of action contained in Section 52–577c.

However, the Court instructs the plaintiff to amend his complaint to clarify that his second cause of action is brought pursuant to a negligence theory.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss [doc. # 110] is DENIED. Plaintiff has fifteen days from the date of this Ruling's filing date to amend the second cause of action of his complaint as instructed herein.

So Ordered.